UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case Number: 23-80666-CIV-MARTINEZ

ERNEST JOSEPH VENNEAU,

 Plaintiff,

v.

SERGEANT BEHESTI, *et al.*,

 Defendants.
_____/

## ORDER DISMISSING COMPLAINT PURSUANT TO 28 U.S.C. § 1915(e)

**THIS MATTER** came before this Court on *pro se* Plaintiff Ernest Joseph Venneau's Complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1). Plaintiff, a state prisoner, alleges that prison officials were deliberately indifferent to his safety in violation of the Eighth Amendment. Plaintiff has been permitted to proceed *in forma pauperis* ("IFP"), so his Complaint is subject to screening under 28 U.S.C. § 1915(e). For the following reasons, the Complaint is **DISMISSED WITHOUT PREJUDICE**.

I.  BACKGROUND

 Plaintiff sues two prison officials, alleging that they failed to protect him from sexual assaults by another inmate. Plaintiff has been in the custody of the Florida Department of Corrections ("FDOC") since 2006. (Compl. ¶ 13, ECF No. 1.) He "identifies as gay or transgender[,]" a fact that, he alleges, the FDOC has logged in a database. (*Id.* ¶ 15.) Plaintiff claims that gangs within FDOC facilities—designated by the FDOC as "Security Threat Gangs" ("STGs")—have "creeds/laws that prohibit homosexuality" and require their members to attack "individuals like the plaintiff who are openly gay or feminine[.]" (*Id.* ¶¶ 6, 8.) Plaintiff claims

that the FDOC knows which inmates are in STGs and assigns a senior corrections officer ("the Gang Sergeant") to each FDOC facility to deal with the threat posed by gangs. (*Id.* ¶¶ 16–17.) He alleges, however, that FDOC officials sometimes "act unprofessionally" and allow an STG inmate to be housed in the same cell as an inmate who is openly gay. (*Id.* ¶¶ 10–12.)

On September 9, 2022, Plaintiff arrived at South Bay Correctional Facility ("South Bay"). (*Id.* ¶ 20.) He alleges that on December 17, 2022, his cellmate discovered he was transgender and threatened to stab Plaintiff if he did not leave the cell voluntarily. (*Id.* ¶¶ 22–23.) Plaintiff notified the captain on duty and filled out a witness form stating that he was "threatened by his cellmate" and was "in fear" for his life. (*Id.* ¶¶ 24–27.) As a result, Plaintiff was removed from the general population and placed into protective management in Wing 1, where he waited to be transferred to Wing 3, "known as the protective management wing at South Bay . . . ." (*Id.* ¶¶ 28–29.)

Plaintiff alleges, however, that Defendant Sergeant Behesti then advised him that there was no room in protective management. (*Id.* ¶ 30.) Behesti told Plaintiff that he would "make sure no inmates [would] hurt [Plaintiff]" in the general population, but Plaintiff protested, stating, "No[,] I'm in fear for my life because a gang member[] threatened to stab me . . . ." (*Id.* ¶¶ 31–32.) Behesti then replied, "If you want to make my job hard I will make your life hell . . . ." (*Id.* ¶ 33.)

Plaintiff alleges that Sergeant Behesti then placed him in a cell with inmate Christopher Dean. (*Id.* ¶ 34.) Plaintiff claims that, at the time, Dean was under investigation for sexually assaulting a previous cellmate. (*Id.* ¶ 43.) Plaintiff does not allege, however, that Dean was in a gang or had ever threatened Plaintiff, or that Behesti knew about Dean's sexual assault charge when he placed Plaintiff in the cell with Dean. The next night, December 18, 2022, Dean allegedly woke Plaintiff up and told Plaintiff to "give him 'some head' (oral sex)." (*Id.* ¶ 35.) Plaintiff states that he initially refused, but Dean threatened to "'knock' Plaintiff 'out[,]'" at which point Plaintiff

2

acquiesced and performed oral sex on Dean. (*Id.* ¶¶ 36–37.) Plaintiff alleges that Dean woke him up again the next night and ordered him to perform oral sex. (*Id.* ¶ 38.)

Plaintiff alleges that the following day, December 20, 2022, he advised Defendant Sergeant Munning that he had been sexually assaulted by Dean. (*Id.* ¶ 41.) Munning allegedly told Plaintiff that he was "not suppose[d] to be in that room" because Dean was in administrative confinement pending the investigation into his alleged sexual assault of his previous cellmate. (*Id.* ¶¶ 42–43.) Nonetheless, Munning put Plaintiff back in the cell with Dean. (*Id.* ¶ 44.) Munning allegedly advised Plaintiff that he would be relocated, but he never moved Plaintiff to a different cell. (*Id.* ¶¶ 44–45.) Munning also purportedly allowed "the crime scene" to be destroyed. (*Id.* ¶ 48.)

Plaintiff claims that the next day, December 21, 2022, he advised Officer Martinez of the situation, and Martinez moved him to a different cell—one which Plaintiff alleges was available on December 17, 2022, the date Sergeant Behesti placed him in the cell with Dean. (*Id.* ¶ 46.) Plaintiff alleges that sometime between January 7, 2023, and January 14, 2023, Behesti came to his cell and threatened him, telling him that if he filed another grievance against Behesti, he would "end up like" an inmate who was murdered. (*Id.* ¶ 55.) Plaintiff was thereafter transferred from South Bay to his current institution, the Mayo Correctional Institution Annex ("Mayo Annex"). (*Id.* ¶ 56.) Plaintiff says that he has filed grievances at the Mayo Annex, which have "disappeared," but he does not specify the content of these grievances.[1] (*Id.* ¶¶ 57–59.)

The Complaint asserts claims under the Eighth Amendment against Sergeant Behesti and Sergeant Munning for deliberate indifference to inmate safety.[2] (*Id.* ¶¶ 60–66.) Plaintiff requests

---

[1] Plaintiff attaches several grievances to his Complaint, *see* (ECF No. 1-1), but does not indicate which grievances correspond to which allegations.
[2] Plaintiff does not state whether he is suing Defendants in their individual or official capacities, but this Court liberally construes these claims as individual-capacity claims because

damages and an injunction that (1) bars the FDOC from housing STG members "with knowingly LGBTQ plus inmates" and (2) directs the FDOC to "develop [a] comprehensive policy to protect LGBTQ plus inmates from preventable harm." (*Id.* at 13–14.)

## II. LEGAL STANDARD

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show that he was "deprived of a federal right by a person acting under color of state law." *Griffin v. City of Opa Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). Because Plaintiff is proceeding IFP, his Complaint must be screened under 28 U.S.C. § 1915(e). *See Dingler v. Georgia*, 725 F. App'x 923, 927 (11th Cir. 2018) (noting that 28 U.S.C. § 1915(e) applies to anyone proceeding IFP); *see also Troville v. Venz*, 303 F.3d 1256, 1260 (11th Cir. 2002). Under 28 U.S.C. § 1915(e)(2), this Court shall dismiss an action if it determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

A pleading fails to state a claim when it does not contain sufficient "factual matter (taken as true)" to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *see also Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008) ("The standards governing dismissals under Rule 12(b)(6) apply to § 1915(e)(2)(B)(ii)."). A complaint need not contain detailed factual allegations, but it must provide as grounds for relief something more than "labels and conclusions" and "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. To survive dismissal,

---

official-capacity claims are simply "another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).

a complaint must "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

This Court holds *pro se* pleadings "to a less stringent standard than pleadings drafted by attorneys" and construes them liberally. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). This leniency, however, "does not give a court license to serve as *de facto* counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014).

### III. DISCUSSION

#### A. *Eighth Amendment Deliberate Indifference to Inmate Safety Standard*

Under the Eighth Amendment, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). But "[n]ot 'every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety.'" *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1320 (11th Cir. 2016) (quoting *Farmer*, 511 U.S. at 834). Rather, a prison official violates the Eighth Amendment only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Id.* Thus, to state a claim for deliberate indifference to inmate safety under the Eighth Amendment, "a plaintiff must produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Id.* (quoting *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013)).

A prisoner may allege a substantial risk of serious harm in one of two ways. First, he may show that he "was the target of a specific threat or danger and that the [prison officials] subjectively

5

were aware of the individualized danger, yet they failed to act to alleviate that risk." *Est. of Owens v. GEO Grp., Inc.*, 660 F. App'x 763, 769 (11th Cir. 2016). Second, a plaintiff may demonstrate a substantial risk of serious harm by showing a "generalized risk of violence" at the facility. *Marbury v. Warden*, 936 F.3d 1227, 1235 (11th Cir. 2019); *see also Purcell ex rel. Estate of Morgan v. Toombs Cnty., Ga.*, 400 F.3d 1313, 1320 (11th Cir. 2005) (holding that "an excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm.").

To show a prison official's deliberate indifference to a substantial risk of serious harm, the plaintiff must establish both a subjective and an objective component. *See Marbury*, 936 F.3d at 1233. "Subjectively, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and also draw the inference." *Id.* "Objectively, the official must have responded to the known risk in an unreasonable manner, in that he or she knew of ways to reduce the harm but knowingly or recklessly declined to act." *Id.* "Finally, the plaintiff must show a necessary causal link between the officer's failure to act reasonably and the plaintiff's injury." *Id.*

### B. *Substantial Risk of Serious Harm*

Plaintiff has plausibly alleged a substantial risk of serious harm based on the specific threat he faced from Dean, his cellmate. In certain situations, an inmate's past behavior may show that he poses a specific threat to another inmate's safety. In *Bowen*, the plaintiff alleged that his cellmate "had committed a 'High–Assault' against his previous cellmate and that the assault had precipitated [the cellmate's] transfer and segregation . . . ." *Bowen*, 826 F.3d at 1322. The Eleventh Circuit found that "this allegation indicates a degree of specificity in the risk of harm posed to Mr. Bowen." *Id.* Likewise, in *Chatham v. Adcock*, 334 F. App'x 281 (11th Cir. 2009), the Eleventh Circuit found that the plaintiff had plausibly alleged a specific threat from his fellow

6

inmate based on, among other things, that inmate's "allegedly repeated acts of violence at the Jail" and his "allegedly belligerent attitude towards whites and, in particular, Plaintiff . . . ." *Id.* at 292. Here, Plaintiff alleges that Dean was in administrative confinement after allegedly sexually assaulting his previous cellmate and that Plaintiff identifies as gay or transgender, making him especially vulnerable to such assaults. These allegations are sufficient to satisfy Plaintiff's burden to plead that Dean posed Plaintiff a specific threat of harm.

  C. ***Claim Against Sergeant Behesti***

Plaintiff has not adequately alleged, however, that Sergeant Behesti was deliberately indifferent to that threat. Plaintiff fails to allege that Behesti actually knew about Dean's sexual assault charge or his confinement status when he placed Plaintiff in the cell with Dean. Plaintiff states that Behesti is a senior corrections officer and the "Gang Sergeant" at South Bay. (Compl. ¶ 62.) Therefore, it may be fair to assume that Behesti *should have known* about Dean's history and custody status, and perhaps he did know. But it is not enough to simply allege, "Well, [he] should have known" about the risk. *See Goodman*, 718 F.3d at 1334; *see also Farmer*, 511 U.S. at 838 ("[A]n official's failure to alleviate a significant risk that he *should have* perceived but did not . . . . cannot under our cases be condemned as the infliction of punishment." (emphasis added)). Plaintiff must allege that Behesti "actually knew of a substantial risk that [Dean] would seriously harm [Plaintiff]." *See Caldwell*, 748 F.3d at 1090. Plaintiff's allegations show that Behesti, as the Gang Sergeant, was at least negligent in placing Plaintiff in a cell with Dean, but "[m]erely negligent failure to protect an inmate from attack does not justify liability under § 1983." *See Goodman*, 718 F.3d at 1332.

Plaintiff also alleges that LGBTQ inmates face threats from gangs at FDOC facilities and that Sergeant Behesti, as the Gang Sergeant, "has basic knowledge regarding the security threat to

a homosexual inmate . . . ." (Compl. ¶ 62.) But Plaintiff does not allege that Dean was in a gang, and Behesti's knowledge of only a "generalized danger" posed by gangs is insufficient to show his subjective awareness of the *specific threat* posed by Dean. *Daniels v. Felton*, 823 F. App'x 787, 790 (11th Cir. 2020) (holding that plaintiff did not establish defendants' subjective awareness of a substantial risk of serious harm where "he contended that the defendants had been forewarned of the danger posed by gangs at the prison," but did present evidence of "any specific prior conflict" between him or his cellmate and attackers). Behesti's subjective awareness of a specific threat cannot be based on his knowledge of "general problems plaguing the Florida prison system," such as threats to LGBTQ inmates. *Owens v. Sec'y of Fla. Dep't of Corr.*, 812 F. App'x 861, 868 (11th Cir. 2020) (holding that plaintiff could not demonstrate defendant's subjective awareness of a risk of being robbed in the prison yard by providing evidence of only general problems at FDOC facilities, such as understaffing and violence).

Plaintiff further claims that he informed Sergeant Behesti that his previous cellmate—not Dean—had threatened to stab him. But an unrelated threat from a different inmate could not have put Behesti on notice of the specific threat posed by Dean. "The unfortunate reality is that threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Marbury*, 936 F.3d at 1236. Therefore, a prisoner's warning to prison officials must "contain[] enough specific information . . . that prison officials could . . . reasonably infer[] that there was a substantial, not merely possible, risk of harm." *Id.* at 1237. Here, Plaintiff's warning about a different inmate did not give Behesti any specific information about the risk of placing Plaintiff in a cell with Dean. In sum, Plaintiff has not alleged

that Behesti was subjectively aware of the specific threat that Dean posed to Plaintiff's safety. Accordingly, Plaintiff failed to state a deliberate indifference claim against Behesti.[3]

### D. *Claim Against Sergeant Munning*

Plaintiff's claim against Sergeant Munning fares no better. Plaintiff alleges that he advised Sergeant Munning of the risk to his safety only *after* he was sexually assaulted by Dean. Thus, as with Sergeant Behesti, Plaintiff fails to allege that Munning was subjectively aware of a risk of serious harm prior to the assaults.

Plaintiff also fails to sufficiently plead causation. Plaintiff alleges that he notified Munning on December 20, 2022, of Dean's sexual assaults the previous two nights and that Munning nonetheless returned Plaintiff to the cell with Dean. But Plaintiff does not allege that Dean ever assaulted him *after* Munning returned him to the cell. Therefore, Plaintiff has not alleged that Munning's action caused any injury. Plaintiff also alleges that Munning "allowed the crime scene to be destroyed," but again, he does not explain how this action caused an injury. Accordingly, Plaintiff failed to state a deliberate indifference claim against Sergeant Munning.

## IV. LEAVE TO AMEND

Plaintiff must be given an opportunity to amend his Complaint. *See Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1132 (11th Cir. 2019) (holding that *pro se* plaintiffs must be given at least one chance to amend a complaint where an amended complaint might state a claim upon

---

[3] Plaintiff also alleges that Sergeant Behesti threatened Plaintiff over the filing of grievances against Behesti. (*See* Compl. ¶ 55.) But this allegation raises a different claim—one for retaliation in violation of the First Amendment—which Plaintiff has not otherwise attempted to plead. *See O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011). Although this Court construes *pro se* pleadings liberally, it may not "rewrite and otherwise deficient pleading in order to sustain an action." *Campbell*, 760 F.3d at 1168–69. If Plaintiff wishes to raise a retaliation claim, he must expressly plead it in his Amended Complaint.

which relief can be granted). An amended complaint, however, must contain *all* of Plaintiff's factual allegations and may not incorporate by reference any allegations in the original Complaint.

In addition, Plaintiff's Amended Complaint must comply with the Federal Rules of Civil Procedure and the Local Rules of the Southern District of Florida. *See Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989). Rule 8 of the Federal Rules of Civil Procedure provides that a pleading that states a claim for relief must contain:

> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a).

## V. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that:

1. The Complaint, (ECF No. 1), is **DISMISSED WITHOUT PREJUDICE**.

2. **On or before Thursday, August 10, 2023**, Plaintiff shall file an amended complaint, labeled "Amended Complaint," that complies with the instructions in this Order. The Amended Complaint shall:

    a. Contain a short and plain statement of Plaintiff's claims against each named Defendant, a basis for federal jurisdiction, and a demand for judgment;

    b. Be either typed in 12-point font or larger and double-spaced or handwritten legibly; and

    c. Cure the deficiencies identified in this Order

3. Plaintiff must use the § 1983 complaint form attached to this Order.

4. The Amended Complaint must show **Case Number: 23-80666-CIV-MARTINEZ**

so that it will be filed in this case.

5.  The Clerk is **DIRECTED** to **ADMINISTRATIVELY CLOSE** this case for statistical purposes only pending the filing of the Amended Complaint. This shall not affect the Parties' substantive rights.

6.  Failure to file an amended complaint by August 10, 2023, may result in the dismissal of this case for failure to prosecute or failure to comply with court orders.

7.  The Clerk of Court is **DIRECTED** to mail Plaintiff the prisoner civil rights complaint form along with this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 30 day of June, 2023.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Ernest Joseph Venneau, *pro se*