UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case Number: 23-80666-CIV-MARTINEZ

ERNEST JOSEPH VENNEAU,

    Plaintiff,

v.

SERGEANT BEHESTI, *et al.*,

    Defendants.
_____/

## ORDER ALLOWING AMENDED COMPLAINT TO PROCEED IN PART PURSUANT TO 28 U.S.C. § 1915(e)

**THIS CAUSE** came before this Court on *pro se* Plaintiff Ernest Joseph Venneau's Amended Complaint pursuant to 42 U.S.C. § 1983. (ECF No. 16.) Plaintiff, a state prisoner, sues two prison officials for failing to protect her[1] from assaults by another inmate. Plaintiff also alleges that one of the two officials retaliated against her after she filed a grievance against him. Plaintiff has been permitted to proceed *in forma pauperis* ("IFP"), so the Amended Complaint must be screened under 28 U.S.C. § 1915(e). For the following reasons, the Amended Complaint is allowed to **PROCEED IN PART** and is **DISMISSED IN PART** as explained below.

### I. BACKGROUND

This Court accepts the following facts as true for the purposes of screening the Amended Complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On December 17, 2022, when

---

[1] Plaintiff referred to herself using male pronouns in the original Complaint but now refers to herself using female pronouns in the Amended Complaint. Because the Amended Complaint supersedes the original Complaint, the Court will use the pronouns Plaintiff uses in the Amended Complaint. *See Fritz v. Standard Sec. Life Ins. Co. of New York*, 676 F.2d 1356, 1358 (11th Cir. 1982) ("Under the Federal Rules, an amended complaint supersedes the original complaint.")

Plaintiff was housed at the South Bay Correctional Institution, she requested to be placed in protective management because, as a transgender inmate, she feared getting stabbed by her cellmate in open population "based on repeated act[s] of violence [against] transgenders at South Bay." (Am. Compl. at 13, ECF No. 16.) Sergeant Behesti, who knew that Plaintiff was transgender, came to speak with her about her request and told Plaintiff to go back to open population. (*Id.*) Behesti, who was assigned to work in the open population dorm at the time, assured Plaintiff that no one would hurt her in open population and advised her that there was no room to house her in the protective management wing. (*Id.*) Plaintiff responded to Behesti, "[N]o, I'm in fear for my life[,]" to which Behesti replied, "[I]f you want to make my job hard, I'll make your life hell . . . ." (*Id.*)

Sergeant Behesti then put Plaintiff in a cell with inmate Christopher Dean. (*Id.*) At the time, Dean was in confinement for raping his previous roommate in an open population dorm. (*Id.*) Behesti had "first hand knowledge of Dean[']s status in confinement" because he was Dean's housing sergeant in the dorm where Dean raped his roommate. (*Id.*) The next night, on December 18, 2022, Dean woke Plaintiff up and demanded that Plaintiff give Dean oral sex. (*Id.*) Plaintiff initially refused, but Dean stated that he would "knock Plaintiff 'out' if Plaintiff keep [sic] acting like a bitch." (*Id.*) Plaintiff then acquiesced and performed oral sex on Dean. (*Id.*) Dean woke Plaintiff up the next night and again forced Plaintiff to perform oral sex. (*Id.*) Plaintiff alleges that as a transgender woman, she is "especially vulnerable to such assaults." (*Id.*)

The following night, on December 20, 2022, Sergeant Munning, the "confinement" sergeant, pulled Plaintiff and Dean out of the room for showers. (*Id.*) Plaintiff then informed Munning that Dean had sexually assaulted her the previous two nights. (*Id.*) Munning told Plaintiff that he would "check the master roster" and then advised Plaintiff that she was "not

supposed to be in that room with inmate Dean." (*Id.*) Munning told Plaintiff to pack her property because she was moving, but Munning then put Plaintiff back in the cell with Dean and went home. (*Id.* at 15.) Dean subsequently attacked Plaintiff, punching her in the head and stomach and choking her. (*Id.*) The following night, on December 21, 2022, Plaintiff was assigned to a different cell, one which had been available on December 17, 2022, the day Sergeant Behesti placed Plaintiff in the cell with Dean. (*Id.* at 14.)

Following these incidents, Plaintiff filed a formal grievance with the warden of South Bay against Sergeant Behesti. (*Id.*) Behesti then "came to Plaintiff and told [Plaintiff] that if [she] filed another grievance against him he would have [her] killed like the inmate in [another dorm] was killed." (*Id.*)

Liberally construed, the Amended Complaint asserts four claims: (1) a claim against Sergeant Behesti and (2) a claim against Sergeant Munning under the Eighth Amendment for deliberate indifference to inmate safety; (3) a claim against Behesti under the First Amendment for retaliation[2]; and (4) a claim Geo Group, Inc., the private entity that operates South Bay, for allowing its officers to "break corporate policies." (*Id.* at 2, 5.) For relief, Plaintiff seeks damages.[3]

## II. LEGAL STANDARD

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show that she was "deprived of a federal right by a person acting under color of state law." *Griffin v. City of Opa Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). Because Plaintiff is proceeding *in forma pauperis* ("IFP"), the Amended Complaint must be screened under 28 U.S.C. § 1915(e). *See Dingler v. Georgia*, 725 F. App'x 923, 927 (11th Cir. 2018) (noting that 28 U.S.C. § 1915(e) applies to

---

[2] Plaintiff sues Behesti and Munning in their individual capacities. (*Id.* at 2.)
[3] Plaintiff also sought injunctive relief in the original Complaint but has abandoned that request.

anyone proceeding IFP); *see also Troville v. Venz*, 303 F.3d 1256, 1260 (11th Cir. 2002). Under 28 U.S.C. § 1915(e)(2), the Court shall dismiss an action if it determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

A pleading fails to state a claim when it does not contain sufficient "factual matter (taken as true)" to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *see also Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008) ("The standards governing dismissals under Rule 12(b)(6) apply to § 1915(e)(2)(B)(ii)."). A complaint need not contain detailed factual allegations, but it must provide as grounds for relief something more than "labels and conclusions" and "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). To survive dismissal, a complaint must "state a claim for relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.

The Court holds *pro se* pleadings "to a less stringent standard than pleadings drafted by attorneys" and construes them liberally. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). This leniency, however, "does not give a court license to serve as *de facto* counsel for a party or to rewrite and otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014).

### III. DISCUSSION

#### A. *Eighth Amendment Deliberate Indifference to Inmate Safety Claims*

Under the Eighth Amendment, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)) (alterations and

quotations omitted). But "[n]ot 'every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety.'" *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1320 (11th Cir. 2016) (quoting *Farmer*, 511 U.S. at 834). Rather, a prison official violates the Eighth Amendment only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Id*. Thus, to state a claim for deliberate indifference to inmate safety under the Eighth Amendment, "a plaintiff must produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Id*. (quoting *Goodman v. Kimbrough,* 718 F.3d 1325, 1331 (11th Cir. 2013)).

A prisoner may allege a substantial risk of serious harm in one of two ways. First, she may show that she "was the target of a specific threat or danger, and that the [prison officials] subjectively were aware of the individualized danger, yet they failed to act to alleviate that risk." *Est. of Owens v. GEO Grp., Inc.*, 660 F. App'x 763, 769 (11th Cir. 2016). Second, a plaintiff may demonstrate a substantial risk of serious harm by showing a "generalized risk of violence" at the facility. *Marbury v. Warden*, 936 F.3d 1227, 1235 (11th Cir. 2019); *see also Purcell ex rel. Estate of Morgan v. Toombs Cnty., Ga.*, 400 F.3d 1313, 1320 (11th Cir. 2005) (holding that "an excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm.").

To show a prison official's deliberate indifference to a substantial risk of serious harm, the plaintiff must establish both a subjective and an objective component. *See Marbury*, 936 F.3d at 1233. "Subjectively, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and also draw the inference." *Id*. (quotations and citations omitted). "Objectively, the official must have responded to the known risk in an unreasonable manner, in that he or she knew of ways to reduce the harm but knowingly or

recklessly declined to act." *Id.* (quotations and citations omitted). "Finally, the plaintiff must show a necessary causal link between the officer's failure to act reasonably and the plaintiff's injury." *Id.* (quotations and citations omitted).

### 1. *Substantial Risk of Serious Harm*

Here, Plaintiff has plausibly alleged a substantial risk of serious harm based on the *specific* threat she faced from inmate Dean. As this Court previously explained in its order dismissing the first Complaint, an inmate's past behavior may show that he posed a specific threat to another inmate's safety. (*See* ECF No. 10 at 6 (citing *Bowen*, 826 F.3d at 1322 and *Chatham v. Adcock*, 334 F. App'x 281 (11th Cir. 2009))). Here, Dean's past conduct—allegedly sexually assaulting his previous cellmate, for which he was placed in administrative confinement—shows that he posed a specific threat to Plaintiff's safety on December 18–19, 2022, when he allegedly sexually assaulted her. Further, Plaintiff's allegation that she identifies as a transgender woman shows that she arguably faced a more substantial risk of sexual assault than a typical inmate. *See Calloway v. Dunn*, No. 20-CV-00807, 2021 WL 3388655, at *5 (N.D. Ala. July 8, 2021), *adopted*, 2021 WL 3371041 (noting that "transgender women face an obvious and particular risk of sexual assault in male prisons"). And of course, Dean's two alleged assaults on Plaintiff show that Dean posed a specific threat to Plaintiff's safety on December 20, 2022, when Sergeant Munning allegedly placed Plaintiff back in the cell with Dean. Thus, Plaintiff's allegations are sufficient at this stage to show that she faced a specific risk of serious harm from being housed in a cell with Dean.

### 2. *Deliberate Indifference Claim Against Sergeant Behesti*

Furthermore, Plaintiff's allegations are sufficient to show that Sergeant Behesti was deliberately indifferent to that specific risk of serious harm. First, Plaintiff has adequately alleged that Behesti was subjectively aware of the risk of harm to Plaintiff. Behesti allegedly knew about

Dean's past behavior and confinement status because Behesti was the housing sergeant in the dorm where Dean purportedly raped his previous roommate. (Am. Compl. at 13.) Behesti also allegedly knew that Plaintiff was transgender. (*Id.*) Therefore, Plaintiff's allegations show that Behesti "actually knew that [Plaintiff] faced a substantial risk of serious harm" from being housed in a cell with Dean. *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 620 (11th Cir. 2007) (holding that corrections officer knew that inmate faced a specific threat from Latin Kings gang members where inmate "specifically told [officer] that some member or members of the Latin Kings had issued a death threat against [inmate]"); *see also Bowen*, 826 F.3d at 1322 (finding that corrections officers knew of specific threat of harm to inmate where they "knew *specifically* that [the inmate's cellmate] had committed a 'High–Assault' against his previous cellmate and that the assault had precipitated [the cellmate's] transfer and segregation") (emphasis in original); *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003) (finding that jail officials "were aware of the substantial risk of serious harm that [inmate's murderer] individually posed to other inmates based on his violent, schizophrenic outbursts which occurred prior to the murder incident.").

Second, Plaintiff's allegations show that Sergeant Behesti disregarded that risk by conduct that exceeded gross negligence. According to Plaintiff, Behesti made the decision to house Plaintiff in the same cell as Dean despite having other options for housing Plaintiff. In other words, Behesti was allegedly "in a position to take steps that could have averted [the sexual assaults] but, through deliberate indifference, failed to do so." *Rodriguez*, 508 F.3d at 622 (quoting *Williams v. Bennet*, 689 F.2d 1370, 1384 (11th Cir. 1982)) (alterations omitted); *see also Nelson v. CorrectHealth Muscogee, LLC*, 644 F. Supp. 3d 1359, 1369 (M.D. Ga. 2022) (finding that the plaintiffs had established the defendants' deliberate indifference where the defendants "had the means to improve the safety of inmates who might be housed with [their attacker] despite the risks

he posed, but they both decided to do nothing."). Thus, Plaintiff's allegations satisfy both the subjective and objective components of a deliberate indifference claim, as they show that Behesti was subjectively aware of the risk of serious harm and responded to it in an objectively unreasonable way. *See Marbury*, 936 F.3d at 1233.

And third, Sergeant Behesti's alleged deliberate indifference caused Plaintiff's injuries. Plaintiff claims that she was sexually assaulted on consecutive nights after Behesti housed her with Dean. Accordingly, Plaintiff has stated a deliberate indifference claim against Behesti.

### 3. *Deliberate Indifference Claim Against Sergeant Munning*

For these same reasons, Plaintiff has also stated a deliberate indifference claim against Sergeant Munning. Plaintiff alleges that (a) she informed Munning on December 20, 2022 that Dean had sexually assaulted her the two previous nights; (b) despite this information, Munning placed Plaintiff back in the cell with Dean, even after Munning informed Plaintiff that she "was not supposed to be in that room" and that she would be moved; and (c) Dean attacked Plaintiff upon her return to the cell. Therefore, Plaintiff has sufficiently alleged that Munning (a) was aware of a risk of serious harm; (b) deliberately disregarded that risk; and (c) caused Plaintiff's injury.

### B. *First Amendment Retaliation Claim against Sergeant Behesti*

"The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003). "An inmate may maintain a cause of action for retaliation under 42 U.S.C. § 1983 by showing that a prison official's actions were 'the result of the inmate's having filed a grievance concerning the conditions of his imprisonment." *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011) (quoting *Farrow*, 320 F.3d at 1248) (alterations omitted). "To prevail on a retaliation claim, the inmate must establish that: '(1) his speech was constitutionally protected; (2) the inmate suffered

adverse action such that the official's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action . . . and the protected speech [the grievance].'" *Id.* (quoting *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008)).

Here, Plaintiff alleges that after she filed a grievance against Behesti, "Behesti came to Plaintiff and told [her] that if [she] filed another grievance against him he will have [her] killed like the inmate in [another dorm] was killed." (Am. Compl. at 14). These allegations clearly show that, because of her grievance, Plaintiff suffered an adverse action that would deter a person of ordinary firmness from engaging in such speech. *See Pittman v. Tucker*, 213 F. App'x 867, 871 (11th Cir. 2007) ("a threat of possible violence [ ] could deter a person of ordinary firmness from filing additional grievances"). Accordingly, Plaintiff's allegations sufficiently state a First Amendment retaliation claim against Sergeant Behesti.

### C. *Claim against Geo Group, Inc.*

Plaintiff names Geo Group as a Defendant and claims that Geo Group "let [their] officers break corporate policies" but otherwise alleges no facts against Geo Group. Thus, Plaintiff has not stated a claim for municipal liability against Geo Group because she does not allege that Geo Group had an official custom or policy that caused Defendants' deliberate indifference or retaliation. *See Buckner v. Toro*, 116 F.3d 450, 453 (11th Cir. 1997) (private entities that perform traditionally public functions are treated as municipalities for section 1983 purposes); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (municipalities are liable under section 1983 only if "action pursuant to official municipal policy of some nature caused a constitutional tort.").

### D. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that:

1. The Amended Complaint, (ECF No. 16), is **ALLOWED TO PROCEED** against Sergeant Behesti and Sergeant Munning.

2. Geo Group, Inc. is **DISMISSED WITHOUT PREJUDICE**.

3. The Court will order U.S. Marshal's service on Defendants by separate order.

4. Plaintiff's Motion to Compel Performance to Serve the Amended Complaint on the Defendants, (ECF No. 18), is **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 19 day of January, 2024.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Ernest Joseph Venneau, *pro se*

United States Marshal